Argued October 25, 1978, affirmed February 6, 1979

MEYERS, *Appellant,*
*v.*
STATE ACCIDENT INSURANCE FUND,
*Respondent.*
(WCB No. 77-376-IF, CA No. 10863)
590 P2d 285

Susan Elizabeth Reese, Portland, argued the cause for appellant. On the brief were Allan F. Knappenberger, Knappenberger & Tish, and Susan Elizabeth Reese, Portland.

Kenneth L. Kleinsmith, Associate Counsel, Portland, argued the cause for respondent. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Salem.

Before Schwab, Chief Judge, and Lee, Richardson, and Joseph, Judges.

JOSEPH, J.

Schwab, C. J., specially concurring opinion.

## JOSEPH, J.

This is a judicial review proceeding arising under the Injured Inmates Act, ORS 655.505-550. The applicable law, except as specifically provided under the cited act, is the Workers' Compensation Law, ORS ch 656. *Johnson v. SAIF,* 267 Or 299, 302, 516 P2d 1289 (1973).[1]

In September, 1973, claimant was an inmate in the Oregon State Penitentiary. While working in a warehouse, he suffered a low back injury while lifting a 100 pound sack of sugar. He was hospitalized in the prison hospital and received conservative treatment for the injury. About two weeks after the accident, an examining physician diagnosed his condition as "acute lumbosacral sprain with chronic strain symptoms" and "degenerative disc disease at multiple levels in the lumbosacral spine." He was given instructions for the care of his back, told to rest in bed; also ultra sound applications, heat treatments and medication for muscle relaxation were prescribed. A corset was furnished. A week later the doctor found him "some better" but still symptomatic. He was discharged from the prison hospital that week.

■ Claimant filed a claim. On November 20, 1973, SAIF made an order, acknowledging that he was entitled to make a claim and continuing:

> "It further appears that no benefits are payable at this time as said inmate is still in confinement.
>
> "The Fund hereby orders the acceptance of the filing of the claim and further orders the review of the claim upon being notified of release of inmate from confinement."

---

[1] In revising ORS ch 656 to eliminate circuit court review and provide for direct review from the Workers' Compensation Board in this court, the legislature neglected to amend ORS 655.525, leaving an irrelevent reference to circuit court review.

The first quoted sentence is merely a paraphrase of ORS 655.515(1),[2] but the second evidences a procedure that was in part at least the origin of the problems this claim has produced. Under ORS 655.520(2)[3] SAIF was required to make an "initial award," not merely to acknowledge the claim, but it did not then (or ever) determine a monetary award of compensation.[4]

Coincidentally, on the same day as the order was made, claimant was released from the penitentiary on "terminal leave," and a month later he was formally discharged. The day after leaving the prison he went to work in a sign shop in Portland. A month later he quit because, he testified, it was too painful for him to work standing on a concrete floor. Subsequent employment efforts at selling and leasing furniture and selling used cars were short-lived and unsuccessful. Claimant testified at the hearing that he may have earned as much as $60 a week at the first job and "$37, $38" a week in commissions in the month or so spent at the car lot. Although the record is not very clear on the point, it suggests that claimant has not worked at gainful employment since sometime in the spring of 1974.

Just why he has not worked is also not at all certain. He traces all of his troubles to the injury in 1973. His medical history makes that idea incredible in the classic sense. Beginning in April, 1974, he was a very frequent in- and out-patient at the University of

---

[2] ORS 655.515(1):

"No benefits, except rehabilitation services, shall accrue to the inmate until the date of his release from confinement and shall be based upon his condition at that time."

[3] ORS 655.520(2):

"When a claim is approved, the State Accident Insurance Fund shall make an initial award conditioned as provided in subsection (1) of ORS 655.515. Upon release of the inmate from confinement, the State Accident Insurance Fund shall reaffirm or modify its initial award in a manner appropriate to the condition of the inmate upon his release."

[4] Nothing in the record indicates that claimant's application was in any way insufficient or irregular. It is not denied that claimant received a copy of the order.

Oregon Health Sciences Center down to the time of the hearing before the referee. That first visit was because of back pain, and the examining physician felt his back symptoms were sufficient to limit his work ability.[5] A month later no objective findings were noted. X-rays taken at that time showed no significant change from those taken in October, 1973. Toward the end of June, 1974, claimant was found to be medically stationary and was given instructions for exercise and back care.

Meanwhile, he began to seek treatment for other conditions which have contributed mightily to his debilitation, including some sort of drug addiction, alcoholism, diabetes, contusions and abrasions from falls related to his drinking, infections and other real or imagined illnesses. Through all of that he continued to suffer some pain and limitation of activity related to his back injury, although probably none of his visits to the medical school were specifically stimulated by his back condition. *Symptoms* of his osteoarthritis might have been produced or increased by that injury, but the disease itself was neither caused nor made worse by it.

At the time he was found medically stationary, it was felt that he should not lift heavy objects, carry long distances or do repeated bending or twisting. The reviewing doctor concluded:

"I would judge Mr. Meyers' disability [in June, 1974] to be in the moderate range * * *, but that as a result of his injury * * * only a portion of this, *i.e.,* the 'mild' category, would be referable to the injury reported at the Oregon State Penitentiary."

None of his other medical problems was traced to the back injury.

---

[5]Most of the description here of claimant's medical history is drawn from two reports made at his attorney's request by a physician at the medical school. To the extent that the doctor was reporting the findings of others, those findings are all supported by discrete entries in the medical record.

In August, 1974, SAIF received a letter from an attorney indicating claimant had been released and was having back problems. A letter to that attorney requesting current medical reports was not answered. Nothing further transpired until October 1, 1976, when claimant's present attorney notified SAIF of his representation and requested a claim status report. Claimant forwarded medical reports, and SAIF contacted the medical school. On December 30, 1976, an employee in the Medical Records Department wrote SAIF as follows:

"After reviewing * * * James Meyers' medical records, we find that we are unable to medically justify the patient's claim that his current problems are related to the industrial injury of September 23, 1973. * * *

"* * * We have conferred with a physician and he has also reviewed Mr. Meyers' records, and we are unable to relate the majority of these problems with the industrial injury. It is possible that his low back pain could be associated to the injury; however, we have noted throughout his medical records that he has had several falls due to a drinking problem.

"During the examination on May 24, 1974, the examining physician stated that upon examination no objective orthopedic findings were revealed. * * *"

That was the last information SAIF received.

On January 14, 1977, a determination order was issued, which said, in part:

"It now appearing that medical treatment has been completed and no permanent impairment resulted from this injury, IT IS HEREBY ORDERED THAT THIS CLAIM BE CLOSED."

Claimant requested a hearing. The referee read the record to show that as of May, 1974, although claimant's back problems limited his ability to work, that limitation was not related to the 1973 accident. The referee was incorrect in that, for it is clear that when claimant was declared medically stationary a month later he was suffering an accident-related mild disability. Further, the record shows that as late as April,

1976, he was still suffering from the chronic low back pain and chronic lumbosacral strain caused by the accident, and nothing shows that that problem has ever been curred. The referee commented that claimant's alcoholism, drug abuse and other, non-injury related ailments "probably contributed more to his inability to stay on his feet" than the disability resulting from the accident.

The referee found "no convincing evidence" that claimant was suffering a permanent partial disability, that he had been at any time temporarily totally disabled, or that there were any unpaid medical services attributable to the injury. He held that the claim was not prematurely closed and that SAIF was not subject to penalties for its handling of the claim. He found that "[t]he claim is considered non-disabling" because claimant lost no work time, because there was no evidence of the kind of work claimant was qualified for or evidence that he would have to return to "modified work" or evidence that he had suffered a reduction in pay, and because "[p]erma-nent impairment * * * is not obvious or highly prob-able but in fact is speculative." He ordered the matter dismissed.

On review, the Board found that SAIF was "delin-quent in processing the claimant's claim" because it failed to comply with ORS 655.520(2).[6] SAIF was directed to pay claimant total temporary disability from December 20, 1973 (the date of his formal release from the penitentiary) through June 24, 1974,[7] to-gether with a 10 percent penalty and an attorney's fee of $800 on account of the mishandling of the claim.

---

[6] The Board treated the November 20, 1973, order as an "award" but found that failure to affirm or modify it on claimant's release was a violation of the statute. How the original order was in any sense an "award" is unexplained. It did not state any amount of compensation under ORS 656.210 for total temporary disability or direct that anything ever be paid claimant pursuant to ORS 656.262.

[7] The parties accept this date as the date when his condition was determined to be medically stationary, but either June 19 or June 30 is supported by the record.

Claimant brought the matter here for review. His first assignment of error rests on the assertion that he in fact suffers an unscheduled permanent partial disability as a result of the 1973 accident. The medical record supports that conclusion because he has never recovered from the injury to his low back. It would, however, be extremely difficult to assess the extent of that injury as an impairment of his ability to work because nothing in the medical record or in any of the evidence at the hearing serves to separate his accident-related problems from his problems which are independent of that injury after June 30, 1974. Nonetheless we would be required to make that assessment, were it not for a fatal defect in the record.

■■ Loss of earning capacity is the test to determine the extent of an unscheduled disability such as this one. *Surratt v. Gunderson Bros.,* 259 Or 65, 78, 485 P2d 410 (1971). There is not a scintilla of reliable evidence in this case relating to client's earning capacity before the accident or after his medical condition had become stationary. All that was shown was that he had some residual physical limitations. But without evidence that that "disability" affected his ability to gain and hold employment of the sort for which he had previously been fit, the claimant totally failed in his burden of proof. Without that evidence there is no basis for determining the extent of the disability and no basis for making an award for permanent partial disability. The other assignments depend upon the first one or are not appropriate in this proceeding.

Affirmed.

**SCHWAB, C. J.,** specially concurring.

Under my view of the law, the majority contradicts itself. First, the majority accepts the medical evidence that claimant's 1973 back injury has produced some degree of disability:

"Through all of that [apparently referring to 1974-76] he continued to suffer some pain and limitation of

activity related to his back injury * * *." 38 Or App at 393.

"* * * it is clear that when claimant was declared medically stationary * * * he was suffering an accident-related mild disability * * *." 38 Or App at 394.

"* * * [claimant] has never recovered from the injury to his low back * * *." 38 Or App at ——.

But then the majority says there is "not a scintilla" of evidence relating to claimant's loss of *earning capacity.* 38 Or App at 396.

This is inconsistent for the simple reason that medical evidence about extent of physical impairment is some evidence—and most frequently the most significant evidence—of loss of earning capacity. To illustrate, suppose a healthy 18-year old who has not previously worked is sent to jail. Suppose, as is the case before us, officials assigned him to do some strenuous physical task; suppose he injured his back; suppose credible medical evidence established that, because of the injury, he will never again be able to bend, stoop, lift or stand for long periods. I would have no difficulty finding a loss of earning capacity on such a record. But the majority apparently would deny the teenager any permanent-disability compensation, presumably insisting that there has to be evidence of pre-injury and post-injury earnings. I think the majority is confusing *earnings* with earning *capacity.* Actual earnings may be some evidence of earning capacity, but I do not think such evidence is essential or even necessarily controlling.

As I read *Surratt v. Gunderson Bros.,* 259 Or 65, 485 P2d 410 (1971), it is consistent with my understanding, and inconsistent with the majority's analysis.

I join in holding that claimant has failed to prove any permanent disability resulting from his 1973 injury on the ground that, unlike the majority, I do not find claimant's medical evidence persuasive.

Lee, J., joins in this specially concurring opinion.